UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **Bruce Simmons** | § | |
|     **Plaintiff** | § | |
| | § | |
| V. | § | **CIVIL ACTION NO. 4:11-CV-04609** |
| | § | |
| **Liberty Life Assurance** | § | |
| **Company of Boston** | § | |

### MEMORANDUM & ORDER

Before the Court is Defendant Liberty Life Assurance Company of Boston ("Liberty Life" or "Defendant's") Motion for Summary Judgment, (Doc. No. 16), and Plaintiff Bruce Simmons ("Simmons" or "Plaintiff's") Motion for Summary Judgment, (Doc. No. 15-1). After considering the motions, responses, and applicable law, the Court **GRANTS** Defendant's Motion and **DENIES** Plaintiff's Motion.

### I. BACKGROUND

This is a claim for long term disability ("LTD") benefits pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et. seq. Plaintiff was employed by Yellow Book USA, Inc. ("Yellow Book"), the sponsor of a group disability plan insured by Liberty Life. Plaintiff alleges that he is owed long-term disability ("LTD") benefits from Liberty Life.

Simmons was hired by Yellow Book on June 4, 2007, and he last worked on May 3, 2010, at which time he was 60 years of age. (Doc. No. 14-1, at 66.) Simmons was employed as an Account Representative, and his job requirements included sales, appointments, driving to client sites, preparing account documents, collecting past due

1

accounts, overnight travel, standing 1 - 2 hours per day, sitting 2 - 4 hours per day, walking up to 5 miles per day, and carrying up to 25 pounds for up to 6 hours per day. (Doc. No. 14-3, at 100-101.) Liberty classified the job as "account rep with medium demands and driving." (Doc. No. 14-1, at 17.)

In May 2010, Simmons underwent a cardiovascular catheterization. (Doc. No. 14-3, at 53-54.) His primary care physician completed a Restrictions Form and listed his diagnoses as chest pain, coronary artery disease, and affective disorder. (Doc. No. 14-3, at 64.) Simmons submitted a claim form to Liberty Life, in which he sought benefits from the Yellow Book Short Term Disability Benefits Plan. *Id.* Simmons' claim was approved, and he received benefits under the short term disability plan. Simmons' policy provided that, during the initial 24 months of the claim life, "disabled" means that the participant "as a result of Injury or Sickness, is unable to perform all of the material and substantial duties of his Own Occupation." (Doc. No. 14-4, at 8). "Own Occupation" means Simmons' "occupation that he was performing when his Disability or Partial Disability began," "as it is normally performed in the national economy." (Doc. No. 14-4, at 12). To obtain the necessary information under the policy concerning Simmons' Own Occupation, Liberty Life requested an Occupational Analysis that was conducted by Rhonda Randolph, M.S., Vocational Case Manager. (Doc. No. 14-1, at 63). Randolph's analysis was that Simmons' job as Account Representative could be performed as "Inside Sales" at a sedentary physical demand level, or "Outside Sales" at a light physical demand level. *Id.*

Along with undergoing an Occupational Analysis, Simmons was evaluated by a cardiologist and psychiatrist while he was on short term disability. Dr. Sam Woolbert,

Plaintiff's treating cardiologist, stated that Simmons had a Class 4 physical impairment (moderate limitation of functional capacity; capable of clerical/administrative activity). Plaintiff's psychiatric assessment, performed by Dr. Ginsburg, diagnosed Simmons with depression, bipolar disorder, and general affective disorder. (Doc. No. 14-2, at 55.) On September 7, 2010, Simmons underwent a left heart catherization, ventriculography, and coronary angiogram. (Doc. No. 14-2, at 60-61.)

After Simmons' short term benefits expired, he applied for LTD benefits on October 8, 2010. Simmons attached to his application for benefits a new statement from Dr. Woolbert, in which Dr. Woolbert indicated that Simmons was capable of performing sedentary tasks on a full-time basis, defined as lifting/carrying up to 10 pounds occasionally, sitting more than 50% of the time, and standing/walking occasionally. (Doc. No. 14-1, at 76.) Dr. Woolbert noted diagnoses of coronary artery disease, cardiomyopathy, and hyperlipidemia, with symptoms of exertional fatigue, chest pain, and dyspnea. *Id.*

Liberty Life requested an independent peer review by a cardiologist, Dr. Raye Bellinger. (Doc. No. 14-1, at 73.) Dr. Bellinger was not able to discuss Plaintiff's condition with his treating physician, Dr. Woolbert. (Doc. No. 14-1, at 38.) However, Dr. Bellinger stated that Simmons was capable of performing a sedentary occupation, and described Simmons' restrictions as sitting 8 hours a day, standing and walking for brief periods, lifting/carrying 10 pounds occasionally, and pushing/pulling up to 25 pounds occasionally. *Id.* Liberty Life's independent psychiatrist, Dr. Dalpe, was unable to talk with Dr. Ginsburg. (Doc. No. 14-1, at 26.) Dr. Dalpe noted that there was no complete mental status examination or cognition measurements in the file, and stated that Simmons

3

did not have symptoms severe enough to cause any functional psychiatric impairments. (Doc. No. 14-1, at 27.)

On November 29, 2010, Liberty Life denied Simmons' LTD claim, noting that Simmons did not fit the definition of "Disability" in the policy. (Doc. No. 14-5.) Liberty Life concluded that Simmons was able to perform the duties of his "Own Occupation", and thus, he did not meet the policy's definition of Disability. (Doc. No. 14-5.) Simmons was given 180 days from the receipt of the denial letter in which to request review of the decision. (Doc. No. 14-5, at 4.) The denial letter stated:

> [Y]ou may request a review of this denial by writing to the address below. . . . The written request for review must be sent within 180 days of the receipt of this letter and state the reasons why you feel your claim should not have been denied. In your request for review please include the following documentation: office visit notes, diagnostic tests results, therapy notes, from all providers; as well as any additional information which you feel with support your claim. You may request to review pertinent claim file documents upon which the denial of benefits was based. If Liberty Life does not receive your written request for review within 180 days of your receipt of this notice, our claim decision will be final, your file will remain closed, and no further review of your claim will be conducted.

*Id.* Simmons' counsel wrote a letter to Liberty Life, dated May 20, 2011, which was 172 days after the denial letter from Liberty Life. (Doc. No. 14-6, at 1). Both parties agree this letter was submitted within the 180 day window for an appeal. The letter requested a copy of the claim file, and read:

> Mr. Simmons has requested me to represent him in appealing the reference claim. I have enclosed his written authorization. For that purpose please forward to us all relevant documentation and information concerning his claim and upon which the decision was made.
> I have a copy of the November 29 letter but otherwise I do not have sufficient documentation to know what material to supplement. After receipt of a copy of Mr. Simmon [sic[ claims file I will be able to effectively respond to the denial with supplementing medical documentation and with a brief argument in support of his claim.

*Id.* Liberty Life's notes state that it sent a copy of the file on disk to Simmons on June 9, 2011. (Doc. No. 14-1, at 2.) On October 17, 2011, Simmons called Liberty Life to

4

inquire about the status of his appeal, and was told that, while Liberty Life received his attorney's letter, it had never received the argument in support his claim, medical documents, or any other additional information. *Id.* Liberty Life advised Simmons to follow up with his attorney. *Id.*

Defendant argues in its summary judgment motion that, because Simmons did not file an appeal with Liberty Life, Simmons did not exhaust his administrative remedy, a prerequisite to his ERISA claim. Alternatively, Defendant argues that it did not abuse its discretion by denying Simmons' claim for benefits under the policy. Plaintiff argues in his summary judgment motion that the letter written to Liberty was an appeal. Thus, Plaintiff alleges that he pursued administrative remedies within 180 days. Additionally, Plaintiff argues that Liberty Life breached statutory and fiduciary duties to Plaintiff when it did not disclose the definition of "Own Occupation," and did not consider Plaintiff's letter as an appeal.

## II. LEGAL STANDARD

Summary judgment is warranted when a party establishes that there is no genuine dispute about any material fact and the law entitles the party to judgment. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of demonstrating that there is no actual dispute as to any material fact of the case. Fed. R. Civ. P. 56(a), *Willis v. Roche Biomed. Lab.*, 61 F.3d 313, 315 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).

Furthermore, the summary judgment standard "provides that the mere existence of *some* factual dispute will not defeat a motion for summary judgment; Rule 56 requires that the fact dispute be *genuine* and *material*." *Willis*, 61 F.3d at 315. First, "[o]nly

disputes over facts that might affect the outcome of the suit under the governing law are material." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Second, a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citing *Anderson*, 477 U.S. at 248). While all justifiable inferences should be drawn in the nonmovant's favor, conclusory affidavits will not suffice to create or negate a genuine issue of fact. *Anderson,* 477 U.S. at 255; *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991); *Shaffer v. Williams,* 794 F.2d 1030, 1033 (5th Circ. 1986).

## III. ANALYSIS

The Court will first consider whether Simmons exhausted his administrative remedies before filing this suit. The Fifth Circuit has clearly embraced the requirement that ERISA plan participants must exhaust all administrative remedies within the ERISA plan before seeking federal court review of a benefit denial. *Denton v. First Nat. Bank of Waco, Texas,* 765 F.2d 1295, 1300 (5th Cir. 1985) *citing Amato v. Bernard,* 618 F.2d 559 (9th Cir.1980); *see also Simmons v. Wilcox,* 911 F.2d 1077, 1081 (5th Cir.1990) (a claimant "must exhaust ... [his] administrative remedies before complaining of a breach of fiduciary duty in federal court.") "The policies behind the exhaustion requirement include upholding Congress's desire that ERISA trustees and not the federal courts be responsible for the actions of plan administrators, providing a clear record of administrative action if litigation ensues, and allowing judicial review of fiduciary action or inaction under the abuse of discretion standard, where applicable, rather than *de novo."* *Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corporations,* 215 F.3d 475, 479 (5th Cir. 2000). The parties do not dispute that, in order to exhaust remedies,

6

Simmons needed to appeal the termination of his benefits within 180 days of Liberty Life's denial letter.

Liberty Life argues that the letter Simmons' counsel sent did not constitute an appeal. It is uncontested that Liberty Life forwarded a copy of the claim file to Simmons' counsel in response to the letter, but no further communication or correspondence was received from Simmons or his counsel until five months later, when Simmons inquired about the status of his claim. (Doc. No. 14-1, at 2.) Plaintiff argues that the May 20th letter constituted an appeal of his claim. However, his contention is contrary to established Fifth Circuit law. In *Swanson v. Hearst Corp. Long Term Disability Plan*, 586 F.3d 1016, 1017 (5th Cir. 2009), Swanson's counsel submitted a letter to the company administering the long-term benefits policy, Hartford Life Insurance This letter was similar to the letter submitted by Simmon's counsel in this case, and indicated that counsel represented Swanson. *Id.* The letter continued:

> Please accept this letter as notice of Debra Swanson's intention to appeal your decision terminating her benefits under the above referenced policy. Once we have had adequate time to review and supplement the record, we will notify you in writing to proceed with Debra Swanson's administrative appeal under the terms of the Plan.

*Id.* The letter also requested various documents from the plan, and asked Hartford to provide counsel with notice of further deadlines. *Id.* The court found that Swanson's letter was not an appeal, as it "included no factual or substantive arguments, and no evidence. There was accordingly nothing for Hartford to consider on appeal, and no basis to require Hartford to issue its decision." *Id.* at 1019. Similarly, in *Piecznski v. Dril-Quip, Inc. Long Term Disability Plan*, 354 F. App'x 207 (5th Cir. 2009), Piecznski's attorney sent a letter to MetLife stating:

7

> Prior correspondence indicates that you have denied long term disability benefits to Mr. Piecznski and that his case is in the administrative appeals process. We believe there is additional evidence that will become available soon that justifies review of his claim.
> Please accept this letter as notice of Mr. Piecznski's intention to appeal your decision denying benefits under the above referenced policy. Once we have adequate time to review and supplement the record, we will notify you in writing to proceed with Mr. Piecznski's administrative appeal under the terms of the Plan.

*Id.* at 210. The letter also requested copies of various documents and "request[ed] that [MetLife] disclose any deadlines imposed under the policy that you believe are pending, will be pending upon any event in the future or that you believe have already expired." Piecznski submitted further documentation, but his documents were not sent within the 180 day appeal period. Relying on the *Swanson* case, the court reasoned that Piecznski's letter "was not an appeal—it merely expressed an intention to appeal. Piecznski's letter did not include the required information for an appeal letter." Thus, the court held that Piecznski failed to exhaust available administrative remedies.

Plaintiff cites *Duncan v. Assisted Living Concepts, Inc.*, 2005 U.S. Dist. Lexis 1975 (N.D. Tex., Feb. 10, 2005) to argue that an administrator's treatment of a letter as an appeal, thereby truncating the appeal period, was an abuse of discretion. Plaintiff argues that the treatment of his letter *only* as a request for more information was an abuse of discretion. However, *Duncan* actually supports Defendant's position. In *Duncan*, the claim administrator was found to have abused his discretion in treating a preliminary letter from a claim as an appeal—precisely what Plaintiff is asking of the Court in this case. The *Duncan* court found that the plaintiff's "letter clearly indicates a future intention to file an appeal and requests information to which Duncan was entitled in order to pursue her appeal. This is insufficient to start the appeal process. *See Powell v. A.T. & T. Commc'ns, Inc.*, 938 F.2d 823, 827 (7th Cir. 1991) (holding that a letter threatening

litigation and requesting general information was not a clear enough request for administrative review). Duncan's remedy from the court was based on the fact that the plan administrator had improperly considered the letter an appeal, and then failed to provide Duncan with information and documentation which Duncan was entitled to. *Id.* at *4. Those facts are inapposite to this case, as Simmons was provided the case file, and Liberty Life did not improperly determine that Simmons' letter initiated the appeal process.

It is unfortunate that Simmons' counsel failed to initiate the appeal after receiving the case file from Defendant. However, despite Plaintiff's argument that the letter was titled as an appeal, and served as an appeal, the letter was not an appeal. The letter did not provide factual or substantive arguments as required by *Swanson*, and did not provide any basis for Liberty Life to issue a decision. Because of binding Fifth Circuit precedent, the Court finds that Simmons did not exhaust his administrative remedies before filing this suit. Thus, it is not necessary for the Court to consider the alternative arguments provided by parties as to whether Liberty Life abused its discretion in determining that Simmons did not qualify for LTD. The Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

**IT IS SO ORDERED.**

SIGNED at Houston, Texas on this the 10 day of June, 2013.

KEITH P. ELLISON
US DISTRICT COURT JUDGE